Slip Op. 21-107

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| POKARNA ENGINEERED STONE LIMITED,<br><br>        Plaintiff,<br><br>        v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>        and<br><br>CAMBRIA COMPANY LLC,<br><br>        Defendant-Intervenor. | Before: Leo M. Gordon, Judge<br><br>Consol. Court No. 20-00127 |

**OPINION**

[Commerce's <u>Final Determination</u> is sustained.]

Dated: August 25, 2021

    <u>Lizbeth R. Levinson</u>, <u>Ronald M. Wisla</u>, and <u>Brittney R. Powell</u>, Fox Rothschild LLP, of Washington, D.C., for Plaintiff Pokarna Engineered Stone Limited.

    <u>Joshua E. Kurland</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  On the brief were <u>Brian M. Boynton</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Tara K. Hogan</u>, Assistant Director.  Of counsel were <u>Vania Wang</u> and <u>W. Mitch Purdy</u>, Attorneys, U.S. Department of Commerce, Office of Chief Counsel for Trade Enforcement and Compliance, of Washington, D.C.

    <u>Luke A. Meisner</u> and <u>Roger B. Schagrin</u>, Schagrin Associates, of Washington, D.C., for Defendant-Intervenor Cambria Company LLC.

    Gordon, Judge: This action involves the U.S. Department of Commerce ("Commerce") final determination in the antidumping duty ("AD") investigation of certain quartz surface products ("QSPs") from India.  See <u>Certain Quartz Surface Products from</u>

India, 85 Fed. Reg. 25,391 (Dep't of Commerce May 1, 2020) (final affirm. determ.) ("Final Determination"), and the accompanying Issues & Decision Memorandum, A-533-889 (Dep't of Commerce Apr. 27, 2020), https://enforcement.trade.gov/frn/summary/india/2020-09407-1.pdf (last visited this date) ("Decision Memorandum").  Before the court is the motion for judgment on the agency record of Plaintiff Pokarna Engineered Stone Limited ("PESL").[1]  See Pl.'s Mem. in Supp. of Rule 56.2 Mot. for J. on the Agency R., ECF No. 36 ("Pl.'s Opening Br."); see also Pl.'s Rev'd R. 56.2 Mot. for J. on the Agency R., ECF No. 41-1 ("Pl.'s Br."); Def.'s Resp. in Opp'n to Pl.'s R. 56.2 Mots. for J. on the Agency R., ECF No. 45 ("Def.'s Resp."); Def-Intervenor's Resp. in Opp'n to R. 56.2 Mots. for J. on the Agency R., ECF No. 47 ("Def.-Int.'s Resp."); Pl.'s Reply Brief, ECF No. 53 ("Pl.'s Reply").   The court has jurisdiction pursuant to Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2018)[2], and 28 U.S.C. § 1581(c) (2018).

## I. Standard or Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court

---

[1] To facilitate the efficient disposition of this action, this opinion focuses only PESL's challenge to Commerce's inclusion of PESL's paid sample sales in the agency's calculation of U.S. price of the subject merchandise.  See Scheduling Order, ECF No. 33 (bifurcating briefing in this matter between issues raised by PESL and Consolidated Plaintiff M S International, Inc.).

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code, 2018 edition.

assesses whether the agency action is reasonable given the record as a whole.  Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006); see also Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.").  Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).  Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review.  3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d ed. 2021).  Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record."  8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2021).

Separately, the two-step framework provided in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–45 (1984), governs judicial review of Commerce's interpretation of the antidumping statute.  See United States v. Eurodif S.A., 555 U.S. 305, 316 (2009) (Commerce's "interpretation governs in the absence of

unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous.").

## II. Discussion

PESL, a foreign producer and exporter of the subject merchandise, argues that Commerce should have performed a bona fide sales analysis of what it characterizes as paid sample sales it made in the United States, and that Commerce ultimately should have excluded those sales.  Pl.'s Br. at 7–16; see also Decision Memorandum at 12–14. The court could not find merit in this claim.  For the reasons that follow, the court sustains the Final Determination.

As Commerce explained, it has a practice, followed here, to exclude free samples from the U.S. sales database, treating them as a direct selling expense across remaining U.S. sales.  See Decision Memorandum at 12–14.  A corollary of that practice is that Commerce does not, in investigations, exclude paid U.S. sample sales from the sales database.  More important, Commerce does not perform an ordinary course of trade or bona fide sales analysis for such sales in investigations.  Instead, Commerce has a simpler test: a sale occurs if there is a "transfer of ownership to an unrelated party and consideration."  Id. at 14 (quoting NSK Ltd. v. United States, 115 F.3d 965, 975 (Fed. Cir. 1997)).

Nothing in the statute mandates that Commerce must perform a bona fide sales analysis on paid U.S. sample sales during an investigation.  Plaintiff therefore seeks to engraft "ordinary course of trade" and "bona fide sale" concepts from other provisions of the statutory scheme (i.e., 19 U.S.C. § 1677b(a)(1)(B) (normal value); 19 U.S.C.

§ 1675(a)(2)(B)(iv) (new shipper and administrative reviews)) onto Commerce's calculation of export price during investigations.  Rather than argue that Commerce has a clear non-discretionary duty to act, PESL is left to argue that Commerce has "discretionary authority" to perform a bona fide sales analysis on U.S. sales in an investigation.  See Pl.'s Br. at 14.  And, PESL wants the court to order Commerce to perform this discretionary act.  Id. at 17.  It should go without saying that, without a legal requirement that Commerce perform such an analysis, there is no basis for the court to issue an affirmative injunction that Commerce must conduct a bona fide sales analysis on PESL's paid U.S. sample sales.

PESL also argues that "fundamental fairness" requires that the court override Commerce's current practice with one of the court's own making, directing the agency to conduct bona fide sales analyses on the export price side of the equation in investigations.  See Pl.'s Br. at 14.  This fairness "angle" is not persuasive though, especially when measured against the specific objectives of the "bona fide sales" provision 19 U.S.C. § 1675(a)(2)(B)(iv) (rectifying fraud by and unfairness of importers abusing the new shipper review process), as well as the differences between new shipper/administrative reviews, and investigations.  The Government explains the difference:

> Unlike investigations, both new shipper reviews and administrative reviews involve reviewing exporters and producers under an existing antidumping duty order. Because the exporter or producer in question has notice that it is subject to the discipline of an existing order and potential duty liability, Commerce performs a bona fide sales test to ensure that the exporter or producer has not manipulated their sales in light of the existing order to receive a lower individual rate or margin.  See, e.g., Huzhou, 324 F. Supp. 3d at 1376; Novolipetsk, 483 F. Supp. 3d at 1287 ("The legislative history

> indicates that Congress was driven by concerns that exporters and producers were abusing the ability to obtain a new shipper rate on an expedited basis in order to circumvent antidumping and countervailing duties.").  In an investigation, however, where an order is not yet in place and the exporter or producer is not yet subject to its discipline, the same incentive does not exist for a producer to make atypical sales to receive a lower dumping rate or margin ….
>
> Consequently, as we noted above, PESL fails to point to a single past instance in which Commerce has applied a bona fide sales analysis in an investigation (and we are not aware of any).  Instead, PESL relies heavily on case law discussing application of Commerce's bona fide sales test in administrative or new shipper reviews.  <u>See</u> PESL Br. 13-15.  But as we explained, those proceedings following issuance of an order present different concerns about potential manipulation than those present in an investigation when no order exists.

Def.'s Resp. at 32–33.  Commerce's practice of not conducting a bona fide sales analysis for paid U.S. sample sales during an investigation seems more than reasonable and fair.

### III. Conclusion

Again, the court could find no merit in Plaintiff's claim.  Accordingly, the court sustains the <u>Final Determination</u> as to Commerce's decision to include PESL's paid sample sales in the U.S. sales database.

_/s/ Leo M. Gordon_
Judge Leo M. Gordon

Dated: August 25, 2021
         New York, New York